**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

LIYAH ROBERTS, *next of kin of the Plaintiff's decedent, their father William J. Roberts, et al.*,
Plaintiffs,
v.
DEPUTY ALLEN, *et al.*,
Defendants.

Civil Action No.
1:25-cv-02239-SDG

**OPINION AND ORDER**

This matter is before the Court for consideration of Defendant Deputy Christopher Jerrett Allen's motion for judgment on the pleadings [ECF 29]; Allen's objection to the exhibits attached to Plaintiffs' brief opposing his motion [ECF 43]; Plaintiffs' motion for leave to file a surreply to Allen's motion [ECF 44]; and the motion to dismiss filed by Defendants Gregory Lowe, Bridgett Eiland, Stephen Perry, and Donna Roundtree (the Medical Defendants) [ECF 26]. For the following reasons, Allen's motion is **GRANTED** and his objections are **SUSTAINED**; Plaintiffs' motion is **GRANTED in part**; and the Medical Defendants' motion is **GRANTED in part**.

## I. Factual Allegations[1]

On April 22, 2023, William Roberts was arrested by Allen for public intoxication.[2] Roberts was pronounced dead at 9:35 a.m. on April 26.[3] What happened during the period leading up to Roberts's arrest through the time of his death is the subject of Plaintiffs' complaint.[4] On the morning of April 22, Roberts was in Flat Shoals Park in Newton County, Georgia, working on his car.[5] His car alarm went off, and Allen responded to a complaint about the noise.[6] When Allen arrived at the scene, Roberts told Allen that he felt weird, could not drive because he would pass out, and was having trouble talking because he could not breathe.[7]

1 For purposes of Defendants' motions, the Court treats all well-pleaded allegations in the complaint as true and construes all reasonable factual inferences in Plaintiffs' favor. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citation omitted).

2 ECF 1, ¶¶ 5, 28.

3 *Id.*

4 Although the sources on which Plaintiffs relied to prepare the complaint are not entirely clear, many of the details seem to be based on Allen's body-worn camera footage and information obtained from the Georgia Bureau of Investigation. No exhibits were attached to Plaintiffs' pleading, but the complaint appears to refer to time stamps on the body cam footage (*see, e.g., id.* ¶¶ 41, 44) and documents from the GBI (*see, e.g., id.* ¶¶ 5, 29, 51–52). The body cam footage was attached as an exhibit to Allen's answer. ECFs 16-2, 23. Documents that purport to be GBI interview summaries were attached to Plaintiffs' motion for an extension of time to effect service. ECF 14-1.

5 ECF 1, ¶¶ 21, 25.

6 *Id.* ¶¶ 25–26.

7 *Id.* ¶¶ 29, 32, 37.

Plaintiffs allege that Roberts could not stay still while he was speaking to Allen.[8] Roberts told Allen that he was dehydrated and needed water. Roberts also complained to Allen of "severe gastrointestinal distress" and said that he might pass out because he didn't have his inhalers.[9] Allen responded several times that Roberts was high and expressed concern about Roberts having fentanyl in his system; Roberts denied "ever injecting drugs."[10] Roberts told Allen that, before Allen arrived, Roberts had asked someone (possibly a park ranger) to take him to the hospital but the person declined.[11] Roberts also asked Allen to take him to the hospital.[12] Allen instead transported Roberts to the jail.[13] Although Allen arrested Roberts for public intoxication, Plaintiffs allege that Roberts's condition was not caused by alcohol.[14]

After his arrest, Plaintiffs contend that Roberts was not given any of his prescribed medications for various ailments, including chronic COPD and

---

8 *Id.* ¶ 30.

9 *Id.* ¶¶ 40, 43, 46.

10 *Id.* ¶¶ 29, 35–36, 41.

11 *Id.* ¶ 31.

12 *Id.* ¶¶ 41, 44.

13 *Id.* ¶ 48.

14 *Id.* ¶ 28.

asthma.[15] Roberts was detained, but allegedly never booked, at the jail.[16] Family members who called the jail were reportedly told that Roberts was not there.[17] During his detention, Plaintiffs contend (on information and belief) that Roberts continued to ask to go to the hospital.[18] Unknown officers and health care personnel purportedly saw that he needed medical care but failed to provide appropriate treatment.[19] Defendants Lowe, Eiland, Perry, and Roundtree are alleged to have been the medical staff who should have seen Roberts on April 22 and 23 while he was in custody.[20]

Roberts was released from custody on April 23 at about 6 p.m.[21] He walked behind a wall outside the sheriff's department and laid down behind it.[22] From the time Roberts was released from custody until April 26, Plaintiffs assert that no

---

15 *Id.* ¶¶ 14–16.

16 *Id.* ¶¶ 53, 57. Plaintiffs' allegations about the length of time Roberts was detained are inconsistent. They allege both that he was kept in jail for 16 to 24 hours (*id.* ¶ 53) and that he was not released until more than 30 hours after he was arrested (*id.* ¶ 59).

17 *Id.* ¶¶ 58, 63.

18 *Id.* ¶ 54.

19 *Id.* ¶¶ 55–56, 82–83.

20 *Id.* ¶¶ 72–73.

21 *Id.* ¶ 59.

22 *Id.* ¶ 61.

sheriff's officer or medical professional checked on him.[23] Around 8 a.m. on April 26, a yard crew and "one or more guards" at the sheriff's office saw Roberts, who was motionless.[24] The coroner pronounced him dead about 90 minutes later.[25] The autopsy report stated that Roberts had contusions and abrasions all over his body and that his cause of death was ischemia of lower intestines due to methamphetamine.[26]

Plaintiffs are Roberts's children, Liyah and Izaiah.[27] Liyah is proceeding on her own behalf as Roberts's next-of-kin.[28] Izaiah is proceeding on behalf of himself and as the prospective temporary administrator of Roberts's estate.[29] Plaintiffs assert a cause of action for deliberate indifference to medical needs against Allen (Count I); a failure to protect claim against unknown sheriff's deputies (Count II); medical indifference against Lowe, Eiland, Perry, Roundtree, and unknown

---

23 *Id.* ¶ 62. There is no allegation in the complaint that any Defendant knew or should have known about Roberts's location or condition after he was released from custody. *See generally* ECF 1.

24 *Id.* ¶ 64. Although not entirely clear from the complaint, it appears that Roberts died before he was found by the yard crew and/or guard(s). *Id.* ¶¶ 64–65.

25 *Id.* ¶¶ 64–65.

26 *Id.* ¶¶ 68–70.

27 *Id.* ¶ 6. For clarity, this Order refers to William Roberts as "Roberts."

28 *Id.* ¶ 7; *id.* at 1.

29 *Id.* ¶¶ 7–8. Izaiah was a minor at the time of Roberts's death and reached the age of majority sometime in 2024. *Id.* ¶ 6.

deputies (Count III); and, a claim against unknown deputies for lying to Roberts's family members or failing to maintain a list of persons being detained (Count IV).[30]

## II. Discussion

Allen moves for judgment on the pleadings on the grounds that Plaintiffs' claims are barred by the statute of limitations and that he is entitled to qualified immunity.[31] The Medical Defendants move to dismiss on the basis that the claim against them is barred by the statute of limitations and for failure to state a claim.[32] Before addressing the claims against the named Defendants, the Court turns to Plaintiffs' attempt to pursue claims against unidentified individuals.

### A. Claims Against Unknown Defendants

Counts II and IV of the complaint are brought only against unknown Defendants; Count III is, in part, asserted against such individuals.[33] Whatever

---

30 *Id.* ¶¶ 75–85.

31 ECF 29.

32 ECF 26.

33 ECF 1, at 11 ("Count II—Failure to Protect [brought] against deputies whose names are unknown, or in the alternative, assault by one or more deputies whose names are not [sic] unknown"); *id.* ("Count III—Medical Indifference, while in the jail and when he lay just outside the jail, against medical staff of Gregory Lowe, Bridgett Eiland, Stephen Perry and Donna Roundtree; and against unknown deputies as to the same acts and failures or refusals to act in the face of facts and duty to act"); *id.* at 12 ("Count IV—Unknown deputies who lied to the family indicating Roberts was not there, and/or one or more deputies who jailed Roberts without booking him, or who otherwise failed to follow state law and the duty to maintain a list of persons jailed . . . .").

their legal capacity to assert claims related to Roberts's death, Plaintiffs cannot pursue claims against these unidentified people.

"[F]ictitious-party pleading is not permitted in federal court," *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citing *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997)), unless "the plaintiff's description of the defendant is so specific as to be at the very worst, surplusage," *id.* (cleaned up). The complaint here contains no description of the unnamed defendants nor any specific details that could be used to identify them. Where a pleading's description of a putative defendant is insufficient to "identify the defendant among the many guards" at a facility, the claims against that defendant are properly dismissed. *Id.; see also Dean*, 951 F.2d at 1215 n.6, 1216 (concluding that a pro se plaintiff had "adequately described the person to be sued so that the person could be identified for service"; the description was sufficiently clear to allow service on the "Chief" of the jail).

The descriptions here—such as "Plaintiffs['] decedent was made to suffer great physical pain and suffering at the hands of either one or more officers beating him, or one or more officers being deliberately indifferent to substantial risk of harm from other inmates, who beat Plaintiffs['] decedent"[34]—are too speculative

---

[34] ECF 1, ¶ 80 (Count II).

and devoid of detail to satisfy the exception to the fictitious-pleading bar. There is no way to identify the alleged offending officers among all the Newton County officers who were at the jail from April 22 through April 26. Moreover, the pleading infers that these unspecified deputies were responsible for assaulting or failing to protect Roberts based solely on the allegation that "before he entered the jail [Roberts] did not have contusions all over his body, but after he left, died and the autopsy performed, he had contusions all over his body." Plaintiffs allege no facts that plausibly support the supposition that Newton County deputies—opposed to any number of other sources—were the cause of Roberts's contusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.") (citations omitted). This compounds the lack of specificity in Plaintiffs' attempt to assert claims against the unnamed officers.

Counts II and IV are dismissed in their entirety; Count III is dismissed to the extent that it is asserted against "unknown deputies."

**B. Allen's Motion for Judgment on the Pleadings**

"Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998); *see also Perez v. Wells Fargo N.A.*, 774 F.3d 1329,

1335 (11th Cir. 2014) ("Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.") (citation omitted). The Court analyzes a motion for judgment on the pleadings using "the same standard as a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *King v. Akima Glob. Servs., LLC*, 775 F. App'x 617, 620 (11th Cir. 2019) (citing *Carbone v. Cable News Network, Inc.*, 910 F.3d 1345, 1350 (11th Cir. 2018)).

In addition to Allen's substantive arguments in favor of dismissal, the parties dispute two procedural issues—whether the Court may consider certain evidence in connection with Allen's motion and whether Plaintiffs should be permitted to respond to new arguments raised in Allen's reply brief. The Court resolves these procedural matters first, then turns to Plaintiffs' deliberate indifference claim against Allen.

**1. Procedural Issues**

Plaintiffs initiated this action on April 23, 2025.[35] Allen was served with process on July 17 and timely answered on August 7.[36] His answer attached the footage of his interaction with Roberts from his body-worn camera.[37] On January

---

[35] *See generally* ECF 1.

[36] ECFs 11, 16.

[37] ECF 23.

20, 2026, Allen moved for judgment on the pleadings.[38] Plaintiffs opposed the motion, relying on the body cam footage, a declaration by their counsel, and documents that Plaintiffs describe as notes from interviews conducted by the Georgia Bureau of Investigation (GBI).[39] Allen objects to Plaintiffs' reliance on the declaration and interview notes at this stage.[40] Plaintiffs oppose Allen's objection, but assert that his motion is due to be denied even if the Court disregards their evidence.[41] Their opposition also contains additional substantive arguments about their claim against Allen.[42]

Separately, Plaintiffs assert that Allen raised new arguments in his reply brief in support of his motion for judgment on the pleadings. They therefore seek leave to file a sur-reply brief that addresses these purportedly new arguments.[43]

#### *i.* Extrinsic Evidence

As a general rule, on a motion for judgment on the pleadings, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d);

---

38 ECF 29.

39 *See generally* ECFs 37, 37-1, 37-2, 37-3.

40 ECF 43.

41 ECF 45.

42 *Id.*

43 ECF 44.

*see also Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005) (same). But, under the incorporation-by-reference doctrine, extrinsic evidence may be considered without converting the motion if the evidence "is central to the plaintiff's claim" and its "authenticity . . . is not challenged." *Adamson v. de Poorter*, No. 06-15941, 2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007) (citations omitted); *see also Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002) (same).

### *a.* Allen's Body Camera Footage

The body camera footage satisfies the incorporation-by-reference doctrine. Allen attached it to his answer,[44] so it is part of the pleadings. Fed. R. Civ. P. 7(a) (pleadings include a complaint and an answer); *id.* 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). In addition, Plaintiffs rely on the footage in their complaint.[45] The video shows Allen's interactions with Roberts before, during, and after the arrest.[46] That interaction is indisputably central to Plaintiffs' deliberate indifference claim—it is the basis for Plaintiffs' assertion that "Allen was exposed to objective

44 ECF 16 (ans.); ECF 23 (notice of filing).

45 *See, e.g.*, ECF 1, ¶¶ 41, 44. The Eleventh Circuit has rejected the argument that body cam footage is not subject to the incorporation-by-reference doctrine because it is not a "written instrument." *Swinford v. Santos*, 121 F.4th 179, 187 (11th Cir. 2024), *cert. denied*, 146 S. Ct. 204 (2025).

46 ECF 23.

information indicating that Roberts was in a serious health condition and needed medical attention."[47] Plaintiffs do not argue otherwise.

Nor do Plaintiffs object to the authenticity of the footage. In fact, they rely on it in their brief opposing Allen's motion for judgment on the pleadings.[48] They instead contend that the footage does not cover the entire relevant timeframe, so it cannot support judgment in Allen's favor.[49] But that is not an argument about the authenticity of the evidence. Plaintiffs do not contend that the body cam footage fails to accurately depict the events it did record or that it has been altered in any fashion. The Eleventh Circuit has made clear that district courts may, at the pleading stage, consider body camera footage where its authenticity is not disputed. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300–01 (11th Cir. 2024) (applying incorporation-by-reference to a motion for judgment on the pleadings and concluding that body camera footage could be considered); *Cantrell v. McClure*, 805 F. App'x 817, 819 n.2, 820 (11th Cir. 2020) (finding no error in the trial court's consideration of "undisputedly authentic footage" on a motion to dismiss). Whether the footage is alone sufficient to support judgment in Allen's favor is a

---

47 ECF 1, ¶ 75.

48 *See, e.g.*, ECF 37, at 3–7.

49 *Id.* at 12 ("[T]he video submitted only takes us up to the beginning of the intake, and we don't know what Allen told jailers from that point forward.").

separate issue.[50] But that issue does not prevent the Court from considering the footage without converting Allen's motion into one for summary judgment.

### *b.* Plaintiffs' Exhibits and Allen's Objections

Plaintiffs' attorney filed a declaration and two exhibits along with the brief opposing Allen's motion for judgment on the pleadings.[51] Allen objects to the Court considering those exhibits.[52] Plaintiffs respond by asserting that Allen is not entitled to judgment. But they do not present any argument about why the Court may appropriately consider their exhibits at the pleading stage.[53] They instead seem to assert that, because Allen submitted the body cam footage, the Court must convert his motion to one for summary judgment and permit them to take discovery—skipping over the assessment of whether their claims were adequately pleaded in the first place.[54] Conversion of Allen's motion is not appropriate nor is consideration of Plaintiffs' exhibits.

---

50 Plaintiffs seem to acknowledge this distinction in their response to Allen's objections. ECF 45, at 4 ("There are narrow exceptions for the use of documents attached to the complaint, referenced, or central to it and undisputed. *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). But those exceptions do not permit a court to resolve disputed merits issues based [on] an incomplete record.").

51 ECF 37-1.

52 ECF 43.

53 *See generally* ECF 45.

54 *Id.* at 8–9.

Plaintiffs' counsel's declaration does not reflect any personal knowledge of the facts alleged in the complaint. In short, it is not evidence. The declaration instead reflects counsel's beliefs based on his experiences as a lawyer and contains additional argument about why Allen's motion should be denied.[55] The details in the declaration are not central to Plaintiffs' claims. Counsel's attempt to testify is not an appropriate way to bolster his clients' pleading. As for the purported GBI interview notes—even if their contents were central to Plaintiffs' claims—they have not been authenticated, are incomplete,[56] and are replete with hearsay.[57]

***ii.*** **Sur-Reply**

Plaintiffs seek leave to file a sur-reply to Allen's motion for judgment on the pleadings on the basis that he raised new arguments in his reply brief.[58] Plaintiffs argue that they should have the opportunity to respond to Allen's "standing/

---

55 *See, e.g.*, ECF 37-1, ¶ 2 ("Based on experience of doing jail cases after working on prison and jail cases during a clerkship in 1978, [I] have heard of city and county jails, with a custom that persons jailed for public intoxication, would be jailed and kept a period, to 'sleep it off,' and be released."); *id.* ¶ 6 ("What has become clear is that there should be pursuit of facts supporting the theory that once at the jail, Roberts was handled under the Sheriff's custom of not booking in 'public intoxication' arrestees, who are not then medically assessed because they are not formally booked . . . .").

56 *See, e.g.*, ECF 37-2 (which does not include pages 2 or 3 of the original document and omits an attachment).

57 *See, e.g.*, ECF 37-2, at 1 (reflecting statements made by "Colley" to "SA Clark").

58 ECF 44.

capacity to sue" argument; his objection that Plaintiffs cannot seek relief related to the appointment of an administrator for Roberts's estate (which also goes to standing); and his arguments about causation and tolling of the statute of limitations.[59] Allen concedes that his reply raised standing and capacity to sue for the first time[60] and he does not object to Plaintiffs' proposed sur-reply on those points. But he objects to Plaintiffs' arguments about causation, wrongful death, and tolling.[61]

The Court grants Plaintiffs' motion as to standing and capacity to sue but denies it as to the remaining issues raised in their proposed sur-reply. Plaintiffs are entitled to respond to Allen's standing arguments, which they have not yet had the opportunity to address (and which concern the Court's subject matter jurisdiction such that they can be raised at any time). *Va. House of Delegates v. Bethune-Hill*, 139 S. Ct. 1945, 1951 (2019) ("As a jurisdictional requirement, standing to litigate cannot be waived or forfeited."); Fed. R. Civ. P. 12(h) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). Plaintiffs' proposed sur-reply is therefore appropriate

---

59 *Id.* at 12.

60 Allen's reply asserts that Plaintiffs lack standing to pursue a deliberate indifference claim against Allen since such a claim can only be brought by the permanent administrator of Roberts's estate. ECF 42, at 3–4.

61 ECF 46.

to the extent that it addresses their capacity to sue and standing, including the appointment of an administrator for Roberts's estate.[62] But their remaining proposed sur-arguments are improper.

In opposing Allen's motion for judgment on the pleadings, Plaintiffs argued that they are bringing a wrongful death claim. Allen's reply countered that the only claim against him is one for deliberate indifference.[63] That is, his reply brief made an argument that directly responded to a point made by Plaintiffs. Allen did not improperly raise in a reply brief a new dispute about whether Plaintiffs brought a wrongful death claim (they did not) by responding to Plaintiffs' own contentions. The same is true for the tolling arguments in Allen's reply brief. Plaintiffs' opposition asserted that their claims were not time-barred and that Allen ignored the applicable tolling statutes.[64] Allen's reply responded to those arguments.[65] Allen's wrongful death and tolling arguments do not warrant a sur-reply by Plaintiffs. In any event and as discussed below, the Court finds it unnecessary to address Allen's statute of limitations arguments because he is entitled to qualified immunity.

---

62 ECF 44-1, at 1–4.

63 *Compare* ECF 37, at 7–8 *with* ECF 42, at 3–4.

64 ECF 37, at 7–9.

65 ECF 42, at 2–4.

Having addressed these procedural issues, the Court turns to the substance of Allen's dismissal argument.

**2. Qualified Immunity**[66]

Plaintiffs allege that Allen was deliberately indifferent to Roberts's medical needs by taking him to the jail rather than the hospital.[67] Plaintiffs also assert that Allen failed or refused to notify anyone at the jail that Roberts needed medical treatment, so Roberts was denied care when he was initially detained.[68]

A claim for deliberate indifference to a serious medical need has both objective and subjective components. *Stalley v. Cumbie*, 124 F.4th 1273, 1283 (11th Cir. 2024). Plaintiffs must adequately allege that (1) Roberts had an objectively serious medical need; (2) Allen acted with subjective deliberate indifference to that need; and (3) Roberts suffered an injury caused by Allen's wrongful conduct. *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011); *see also Arries v. Hill*, 686 F. Supp. 3d 1279, 1303 (N.D. Ga. 2022) (citing *Goebert v. Lee Cnty.*,

---

66 To the extent that Plaintiffs purport to sue Allen in his official capacity for monetary damages (ECF 1, ¶ 10; *id.* at 13), they cannot do so. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71, 71 n.10 (1989) (concluding that state officials acting in their official capacities are not persons subject to liability under § 1983); *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1340 (11th Cir. 2003) (noting that sheriffs act on behalf of the State of Georgia).

67 ECF 1, Count I. Although Plaintiffs spend a portion of their opposition brief arguing that the statute of limitation does not bar a wrongful death claim, they have not asserted any such claim against Allen.

68 *Id.* ¶ 76.

510 F.3d 1312, 1326 (11th Cir. 2007)). Deliberate indifference in this context requires that the defendant (i) have subjective knowledge of the risk of harm to the detainee; (ii) disregard that risk; and (iii) engage in conduct that amounts to "subjective recklessness as used in the criminal law." *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc); *Stalley*, 124 F.4th at 1283. That is, the defendant must *actually know* that *his own* conduct put the detainee at substantial risk of serious harm. *Wade*, 106 F.4th at 1255.[69]

Further, even if a deliberate indifference cause of action is sufficiently pleaded, qualified immunity protects "government officials performing discretionary functions" by "shield[ing them] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Rodriguez v. Farrell*, 280 F.3d 1341, 1345 (11th Cir. 2002) (indicating that a defendant is not entitled to qualified immunity (1) if he violated the plaintiff's constitutional right and (2) the right violated was clearly established). "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who

---

69 Although *Wade* involved the deliberate indifference standard under the Eighth Amendment, 106 F.4th at 1253, the same standard applies to deliberate indifference claims under the Fourteenth Amendment. *Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996).

was knowingly violating the law would have done such a thing, the government actor has immunity from suit." *Rodriguez*, 280 F.3d at 1345 (citation omitted).

The parties do not dispute that Allen was performing a discretionary function when he arrested Roberts and took him to the jail. As a result, the burden is on Plaintiffs to show that Allen is not entitled to qualified immunity. *Piazza v. Jefferson Cnty.*, 923 F.3d 947, 951 (11th Cir. 2019); *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002), *overruled in part on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Allen contends that Plaintiffs have not satisfied either part of their burden—they have shown neither a constitutional violation nor a violation of clearly established law.[70] A failure by Plaintiffs to meet either prong is fatal to their claim. Because Plaintiffs have not pointed to any clearly established law that Allen violated, he is entitled to qualified immunity.

#### *i.* Clearly Established

To demonstrate that a constitutional right was clearly established, a plaintiff may (1) present a "materially similar case" previously decided by the Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court; (2) show that a broader, clearly established principle should control the novel facts of a particular case; or (3) establish that the conduct "so obviously" violates the Constitution, such that prior case law is unnecessary. *Waldron v. Spicher*, 954 F.3d 1297, 1304–05

---

[70] ECF 29, at 9–13.

(11th Cir. 2020). Plaintiffs attempt to travel under the first prong, arguing that "indifference to serious needs like overdoses violates rights," and cite three reported Eleventh Circuit cases in support of their argument.[71] None of those cases, however, clearly establishes that Allen was required to transport Roberts directly to a hospital rather than to the jail because of Roberts's behavior and reported symptoms (inability to stand still; reported dehydration; licking his lips; reported difficulty breathing and gastrointestinal distress; asking to go to the hospital).[72] Nor do the cases cited by Plaintiffs clearly require that Allen have communicated to jail staff that Roberts was in need of medical treatment.

The closest parallel Plaintiffs have pointed to is *Lancaster v. Monroe County*, 116 F.3d 1419 (11th Cir. 1997), *overruled on other grounds as stated in LeFrere v. Quezada*, 588 F.3d 1317, 1318 (11th Cir. 2009). Lancaster was arrested for DUI. When he was taken to jail, his blood alcohol level was more than three times the legal limit. Lancaster's family members repeatedly reported to officers that Lancaster was a chronic alcoholic who would suffer from seizures when the

---

71 ECF 37, at 10 (citing *Patel v. Lanier Cnty.*, 969 F.3d 1173, 1188 (11th Cir. 2020); *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1327 (11th Cir. 2007); *Lancaster v. Monroe Cnty.*, 116 F.3d 1419, 1425 (11th Cir. 1997)). A fourth case mentioned by Plaintiffs, *Skop v. City of Atlanta*, 485 F.3d 1130 (11th Cir. 2007), is inapposite since it dealt with false arrest and malicious prosecution claims. Cases from other circuits cannot be used to show what the clearly established law of the Eleventh Circuit is. *Waldron*, 954 F.3d at 1304–05.

72 ECF 1, ¶¶ 29–43.

alcohol wore off; had almost died in the past from such seizures; and would need external oxygen when he started having seizures. The family members stressed the severity of Lancaster's condition and his need for medical attention when the alcohol began to wear off. The officers agreed to check on Lancaster frequently while he was in custody but allegedly failed to do so. *Id.* at 1422. Despite knowing about his condition, officers left Lancaster on the top bunk of the cell—from which he ultimately fell, striking his head and causing his death. *Id.* at 1421–23.

Nothing in the complaint here suggests Allen had such explicit warnings about Roberts's condition or actually knew that Roberts had a serious need for immediate medical care and intentionally refused to provide it. The allegations are not enough to show actual knowledge. *Id.* at 1425 (noting that the law is clearly established that "an official acts with deliberate indifference when he *intentionally* delays providing an inmate with access to medical treatment, *knowing* that the inmate has a life-threatening condition or an urgent medical condition that would be exacerbated by delay") (emphasis added). Nor does the body cam footage show Roberts in such an impaired state that it was "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Patel v. Lanier Cnty.*, 969 F.3d 1173, 1188 (11th Cir. 2020) (quoting *Taylor v. Hughes*, 920 F.3d 729, 733

(11th Cir. 2019)). Allen discussed Roberts's condition with him, including his drug use, and informed him there were nurses at the jail.[73]

The other two cases on which Plaintiffs rely are even less helpful to their cause. *Goebert* involved a detainee with a high-risk pregnancy and a history of miscarriages, who leaked a significant amount of fluid and did not feel the fetus move for several days but was not taken to see the doctor or transported to the hospital for more than 10 days, ultimately resulting in a stillbirth. *See generally* 510 F.3d 1312. *Patel* involved a sheriff's deputy who left a detainee (Patel) in an unventilated, un-airconditioned transport van on a hot day, which caused Patel to pass out, sweat, and hyperventilate; the deputy failed to provide Patel with water and continued to transport him in the same van. *See generally* 969 F.3d 1173. The facts in these cases are substantially different from those Allen faced here. *Goebert* and *Patel* do not clearly establish that Allen's failure to take Roberts directly to the hospital or report that he needed medical attention was constitutionally deficient.[74]

---

73 ECF 23.

74 Because Allen is entitled to qualified immunity, the Court does not address his statute of limitations argument.

### C. The Medical Defendants' Motion to Dismiss[75]

#### 1. Statute of Limitations

The Medical Defendants argue that Plaintiffs' claim against them is time barred since their alleged negligence occurred on April 22, 2023, and the complaint wasn't filed until April 23, 2025.[76] Read in the light most favorable to Plaintiffs, however, the cause of action against the Medical Defendants for "medical indifference" relates to the period from when Roberts arrived at the jail through the time of his death[77]—April 22 through April 26, 2023.[78] Plaintiffs allege that the Medical Defendants had a duty to examine Roberts and provide him appropriate medical care both while he was in custody *and* after he was released.[79] Roberts was not released from custody until April 23.[80]

---

75 Plaintiffs filed two responses to the Medical Defendants' motion to dismiss. ECFs 27, 28. There are no readily apparent differences between these separate versions of Plaintiffs' brief and Plaintiffs did not seek leave to amend their response or explain why a second filing was needed. Accordingly, the Clerk is directed to strike the second response [ECF 28] from the docket as having been improperly filed.

76 ECF 26-1, at 3–5.

77 ECF 1, Count III (applying the cause of action to the time "while [Roberts was] in the jail and when he lay just outside the jail").

78 *Id.* ¶ 5.

79 *Id.* ¶ 82.

80 *Id.* ¶ 59.

The cause of action against the Medical Defendants is governed by a two-year limitations period. *Holland v. Gov. of Ga.*, No. 25-14515, 2026 WL 1329206, at *2 (11th Cir. May 11, 2026) (noting that the statute of limitations period for § 1983 claims in Georgia is two years). "[D]ismissal on statute-of-limitations grounds is proper only where it is apparent from the face of the complaint that the claim is time-barred." *Wainberg v. Mellichamp*, 93 F.4th 1221, 1224 (11th Cir. 2024) (cleaned up). Because Plaintiffs allege that the Medical Defendants' relevant conduct extended beyond April 22, it is not clear from the face of the complaint that Plaintiffs' medical indifference claim is time barred: Claims accruing on or after April 23, 2023 are timely. Accordingly, the Medical Defendants' motion to dismiss is denied as to the statute of limitations defense.

**2. Failure to State a Claim**

A complaint must plead sufficient facts, accepted as true, to state a claim for relief that is plausible on its face. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (citing *Twombly*, 550 U.S. at 570). A complaint is plausible when it contains enough factual content for the Court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint fails to state a claim when it does not "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Allegations that show only "a sheer possibility that the defendant acted unlawfully" are not enough. *Waters Edge Living, LLC v. RSUI Indem. Co.*, 355 F. App'x 318, 322 (11th Cir. 2009).

The Medical Defendants argue that the complaint fails to state a claim because Plaintiffs do not allege that Roberts had a serious medical need or facts showing the Medical Defendants' subjective intent to punish.[81] Plaintiffs do not respond to this argument directly, asserting only that the complaint is sufficient to put the Medical Defendants on notice of the claims against them.[82] But the complaint lacks any allegations that plausibly suggest the Medical Defendants acted with subjective deliberate indifference. Plaintiffs claim the Medical Defendants had a "duty to examine" Roberts and "should have provided him appropriate medical care" but do not assert that the Medical Defendants *actually* knew anything about Roberts's condition and *purposefully* ignored that information.[83] The complaint instead pleads things such as, "[u]pon information and belief, health care personnel whose names are not currently known, saw [Roberts] was in need of medical care and heard [him] request to go to the hospital" and "no officer or medical care-taker, went to check" on Roberts after he

---

[81] ECF 26-1, at 5–9.

[82] ECF 27, at 10–16.

[83] ECF 1, ¶ 82.

left the jail.[84] The only allegations specific to the Medical Defendants are that Eiland, Perry, and Roundtree should have seen Roberts on April 22–23 and Lowe, Perry, and Roundtree should have treated Roberts or sent him to the hospital before he left the jail or when he was lying outside the jail.[85] The complaint is devoid of facts that plausibly suggest the Medical Defendants disregarded a known risk to Roberts or that they in fact knew their own conduct was putting him at risk of harm. *Wade*, 106 F.4th at 1255.

As currently pleaded, the complaint fails to state a claim against the Medical Defendants.

**3. Shotgun Pleading**

The Medical Defendants also argue that the complaint is a shotgun pleading. Such pleadings fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015) (citations omitted). In addition to failing to state a deliberate indifference claim against the Medical Defendants, Plaintiffs failed to attribute any specific conduct to any one of these Defendants. They are instead lumped together and the alleged misconduct in which each Medical Defendant allegedly engaged is unclear. Such group pleading

[84] *Id.* ¶¶ 56, 62.

[85] *Id.* ¶¶ 72–73.

is impermissible. *Id.* at 1323 (describing one category of shotgun complaint as "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions"). Plaintiffs' claim against the Medical Defendants fails for this additional reason. Plaintiffs argue that the proper remedy for this type of pleading defect is to let them replead rather than dismissing with prejudice.[86] Because the failure to state a claim and shotgun nature of Plaintiffs' complaint are correctible defects, Plaintiffs will have the opportunity to file an amended complaint.

## III. Conclusion

Allen's objections [ECF 43] to the exhibits attached to Plaintiffs' opposition brief are **SUSTAINED**. The Court has not considered those exhibits in connection with this Order. The Clerk is **DIRECTED** to **STRIKE** Plaintiffs' second response to the Medical Defendants' motion to dismiss [ECF 28] from the docket as having been improperly filed. Plaintiffs' motion for leave to file a sur-reply [ECF 44] is **GRANTED in part**. The Clerk is **DIRECTED** to file ECF 44-1 separately on the docket as Plaintiffs' sur-reply to Allen's motion for judgment on the pleadings [ECF 29]. The Court has considered Plaintiffs' sur-reply arguments to the extent that they respond to the standing issues raised for the first time in Allen's reply

---

86 *See, e.g.*, ECF 27, at 10; *see generally id.* at 10–19.

brief [ECF 44, at 1–4] and disregarded Plaintiffs' remaining sur-reply arguments as improperly raised.

Counts II and IV of the complaint are **DISMISSED without prejudice**, as is Count III to the extent that it is asserted against unnamed defendants. Because Allen is entitled to qualified immunity, his motion for judgment on the pleadings [ECF 29] is **GRANTED** and the deliberate indifference claim against him in Count I is **DISMISSED with prejudice**. The Medical Defendants' motion to dismiss [ECF 26] is **DENIED** as to their statute of limitations argument but **GRANTED** as to their Fed. R. Civ. P. 12(b)(6) arguments. Within 30 days, Plaintiffs may—consistent with this Order—amend the claim asserted against the Medical Defendants in Count III of their Complaint.

The Clerk of Court is **DIRECTED** to submit this Order to undersigned after 30 days. The Clerk is further **DIRECTED** to administratively close this case.

**SO ORDERED** this 28th day of September, 2026.

Steven D. Grimberg
United States District Judge